AF Approval JG

Chief Approval MPE

FILED

2023 JUL 26 PM 4:59

US DISTRICT COURT
MIDDLE DISTRICT OF FL
ORLANDO FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 6:23-cr- 140-WWB-EJK

LEOPOLD MICHAEL SALEEM

**PLEA AGREEMENT**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, LEOPOLD MICHAEL SALEEM, and the attorney for the defendant, Tim A. Pribisco, mutually agree as follows:

**A. Particularized Terms**

1. Count Pleading To

The defendant shall enter a plea of guilty to Count One of the Information. Count One charges the defendant with conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846.

2. Minimum and Maximum Penalties

Count One is punishable by a mandatory minimum term of imprisonment of 10 years up to a maximum term of life, a fine of not more than $10 million, a term of supervised release of at least 5 years, and a special assessment of $100. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court

may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3. *Alleyne v. United States and Apprendi v. New Jersey*

Under *Alleyne v. United States*, 570 U.S. 99 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the defendant is subject to a mandatory minimum sentence of 10 years' imprisonment and a maximum sentence of life imprisonment as to Count One because the following facts have been admitted by the defendant and are established by this plea of guilty: the defendant conspired to distribute and possess with intent to distribute more than 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, and more than 5 kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance.

4. Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count One are:

First: Two or more people in some way agreed to try to accomplish a shared and unlawful plan the object of which was to distribute and possess with the intent to distribute methamphetamine, a Schedule II controlled substance, and cocaine, a Schedule II controlled substance;

Second: The Defendant knew the unlawful purpose of the plan and willfully joined in on it; and

Third: The weight of the mixture and substance containing a detectable amount of methamphetamine was more than 500 grams, and the weight of the mixture and substance containing a detectable amount of cocaine was more than 5 kilograms.

5. Indictment Waiver

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

6. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement related to the conduct giving rise to this agreement.

7. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies

with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8. Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

9. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture,

pursuant to 21 U.S.C. §§ 853(a)(1) and (2), whether in the possession or control of the United States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful

means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

**B. Standard Terms and Conditions**

1. Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing.

2. Supervised Release

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the

defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the

concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12. Entire Agreement

This plea agreement, the factual basis, and the sealed documents constitute the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 26th day of July, 2023.

ROGER B. HANDBERG
United States Attorney

LEOPOLD MICHAEL SALEEM
Defendant

John M. Gardella
Assistant United States Attorney

Tim A. Pribisco
Attorney for Defendant

Michael P. Felicetta
Assistant United States Attorney
Chief, Orlando Division

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 6:23-cr-

LEOPOLD MICHAEL SALEEM

PERSONALIZATION OF ELEMENTS

Count One:

First: Beginning on an unknown date in 2021 and continuing through on or about October 31, 2022, in the Middle District of Florida and elsewhere, did you and at least one other person, in some way agree to try to accomplish a shared and unlawful plan the object of which was to distribute and possess with intent to distribute methamphetamine, a Schedule II controlled substance, and cocaine, a Schedule II controlled substance?

Second: Did you know the unlawful purpose of the plan and willfully join in on it?

Third: Was the weight of the methamphetamine more than 500 grams and the weight of the cocaine more than 5 kilograms?

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 6:23-cr

LEOPOLD MICHAEL SALEEM

FACTUAL BASIS

Beginning on an unknown date in 2021 and continuing through on or about October 31, 2022, in the Middle District of Florida and elsewhere, the defendant, LEOPOLD MICHAEL SALEEM, did knowingly and willfully conspire with other persons both known and unknown, to distribute and possess with intent to distribute controlled substances.

Specifically, in 2021, SALEEM, began using commercial tractor trailers and other means of transportation to ship methamphetamine and cocaine from Arizona and California to central Florida to be sold. SALEEM had two sources for the drugs, Luis Miguel Hernandez and Saul Sandoval. Hernandez lived in Arizona and would sell SALEEM drugs in Arizona and in California. Sandoval lived in Arizona and would sell SALEEM drugs in Arizona. SALEEM transported all of these drugs to central Florida to be sold by other co-conspirators in central Florida. All of the additional distributions of the drugs, from SALEEM to other co-conspirators, that are described below, occurred in Volusia and Flagler Counties.

On March 4, 2022, law enforcement used a confidential source and conducted a controlled purchase of approximately 443 grams methamphetamine from

SALEEM. On April 5, 2022, law enforcement used the same confidential source and conducted a controlled purchase of approximately 444 grams of methamphetamine from SALEEM.

On June 28, 2022, at the direction of law enforcement, a confidential source (CS) contacted SALEEM on a cellphone to arrange the purchase of one pound of methamphetamine through a series of text messages. On June 29, 2022, the CS had multiple conversations with SALEEM. SALEEM told the CS that Tyrone Jones would be delivering the methamphetamine on SALEEM's behalf. The CS then contacted Jones and a controlled drug buy was set up for a location in Daytona Beach. The controlled purchase was monitored by the Drug Enforcement Administration (DEA) and the Federal Bureau of Investigation (FBI). The CS provided Jones with $2,320 and Jones provided the CS with approximately 444 grams of methamphetamine.

On August 17, 2022, and federal wiretap was authorized for a cellphone number (Target Telephone-1) belonging to SALEEM. This wiretap was lawfully conducted and was renewed multiple times. All of the below described phone conversations and text messages that involved Target Telephone-1 were recorded. The descriptions below are summaries of those conversations.

On August 19, 2022, a series of phone calls were made between SALEEM on Target Telephone-1 and Zara Mascarella in which they discussed Mascarella purchasing cocaine from SALEEM. SALEEM met with Mascarella on this same day and sold her nine ounces of cocaine. On August 22, 2022, Camarie Shavers

contacted SALEEM on Target Telephone-1 and ordered one ounce of cocaine. On August 25, 2022, Alfred Shavers contacted SALEEM on Target Telephone-1 and ordered one ounce of cocaine.

On August 26, 2022, SALEEM used a different cellphone to contact Sandoval about taking a trip to Phoenix, Arizona to purchase additional methamphetamine which SALEEM would transport back to central Florida to sell.

On August 28, 2022, SALEEM contacted Mascarella using Target-Telephone-1 and told Mascarella that he was going out of town soon to see if she needed any more cocaine before he left. Mascarella told Saleem that she would buy some from him tomorrow. On August 29, 2022, SALEEM used Target Telephone-1 and contacted Mascarella through a series of calls and text messages about the drug deal. Mascarella ordered nine ounces of cocaine and SALEEM met her at a predetermined location to sell her the cocaine.

On August 30, 2022, SALEEM used a different cellphone and made two calls to Sandoval about his trip to Phoenix to purchase more methamphetamine from Sandoval. Also on August 30, multiple phone calls occurred between Alfred Shavers and SALEEM on Target Telephone-1. Alfred Shavers ordered one ounce of cocaine and SALEEM delivered it to him.

On September 1, 2022, SALEEM used a different cellphone and contacted Sandoval through a phone call and multiple text messages. SALEEM was contacting Sandoval to update him on his itinerary in Phoenix and when the truck was going to be available to put the drugs on for transport back to central Florida.

On or about September 5, 2022, SALEEM traveled to Phoenix, Arizona and purchased multiple pounds of methamphetamine and multiple kilograms of cocaine from Sandoval and Hernandez in Arizona. SALEEM paid Hernandez $18,000 per kilogram of cocaine. SALEEM paid Sandoval $875 per pound of methamphetamine. Agents from the FBI and the DEA were able to follow the drugs as they were transported on a commercial truck up to New Jersey and then in a rental vehicle down to Florida.

The commercial truck was driven by Wendell Ferreira and SALEEM paid him $12,000 for transporting the drugs. The rental vehicle was driven by another co-conspirator. On September 9, 2022, SALEEM met with Ferreira in Jersey City, New Jersey, removed the drugs from the truck and placed them on a rental vehicle. The drugs arrived in Flagler County on or about September 11, 2022.

Also, on September 11, 2022, Camarie Shavers contacted SALEEM on Target Telephone-1 and through a series of phone calls, Camarie Shavers ordered seven ounces of cocaine. SALEEM delivered the cocaine to Camarie Shavers on the same day. Still on September 11, Mascarella contacted SALEEM on Target Telephone-1 and told SALEEM that she wanted to get four ounces of cocaine the following day.

On September 12, 2022, SALEEM contacted Mascarella and told her that he could deliver the four ounces of cocaine. Law enforcement surveilled SALEEM as he went to a residence at 10 Winterberry Place, Palm Coast, Florida. Law enforcement then observed as SALEEM met with Mascarella in a parking lot on

West International Speedway Boulevard, Daytona Beach. Law enforcement watched as Mascarella got into SALEEM's vehicle and conducted the drug transaction.

On September 14, 2022, the CS made a series of calls and text messages to SALEEM on Target Telephone-1 to order methamphetamine. On September 15, 2022, the CS called SALEEM again on Target Telephone-1 and ordered $8,000 worth of methamphetamine. SALEEM told the CS that Jones would be delivering the methamphetamine on SALEEM's behalf. SALEEM then used Target Telephone-1 and contacted Jones about delivering the drugs to the CS. Law enforcement surveilled SALEEM as he went to the same residence on Winterberry Place, Palm Coast. SALEEM left and went to another location in Palm Coast and met with Jones. After the meeting with Jones, SALEEM used Target Telephone-1 and sent text messages to the CS confirming that Jones was on his way with the drugs. Jones then went to the predetermined location in Daytona Beach where the controlled purchase was monitored by the DEA and the FBI. The CS provided Jones with $8,000 and Jones provided the CS with approximately 1,786 grams of methamphetamine.

On September 21, 2022, Mascarella and SALEEM, using Target Telephone-1, had a series of communications in text messages and phone calls. Mascarella ordered four ounces of cocaine. SALEEM met Mascarella in the same parking lot on West International Speedway Boulevard, Daytona Beach. Law enforcement observed as SALEEM got into Mascarella's vehicle and sold her the drugs.

From September 21 to September 26, SALEEM used Target Telephone-1 to communicate with Jimmy Bizzell through text messages and phone conversations. Bizzell was a commercial truck driver and SALEEM needed Bizzell's trucking route and itinerary because he planned to use Bizzell to transport the drugs from Arizona or California to central Florida.

On September 22, 2022, SALEEM used Target Telephone-1 and called Alfred Shavers. Alfred Shavers ordered one ounce of cocaine and SALEEM confirmed the order.

On September 23, 2022, SALEEM flew to Phoenix to meet with Sandoval and purchase methamphetamine from him. Sandoval was unable to deliver the drugs to SALEEM. Sandoval tried to assist SALEEM with getting a deal for the drugs from Hernandez and Sandoval put in some of his own money for the drug purchase. On or about September 26, 2022, SALEEM purchased multiple pounds of methamphetamine from Hernandez in California. SALEEM paid Hernandez $725 per pound of methamphetamine. Agents from the FBI and the DEA observed as SALEEM brought the drugs to Ontario, California and placed them in the truck driven by Bizzell. Law enforcement followed the drugs as they were transported on the commercial truck to Ocala, Florida. Bizzell transported the drugs for SALEEM, and SALEEM paid him $10,000. The drugs arrived in Ocala and were picked up by SALEEM on or about October 2, 2022.

On September 27, 2022, Camarie Shavers and SALEEM, using Target Telephone-1, had a series of phone calls in which Camarie Shavers ordered two

ounces of cocaine and they agreed on where to meet to conduct the drug deal. Also, on September 27, 2022, Mascarella and SALEEM using Target Telephone-1 had a series of phone conversations. Mascarella ordered 4.5 ounces of cocaine and they met at a location in Bunnell, Florida to conduct the drug deal.

On October 1 and 2, 2022, Camarie Shavers and SALEEM, using Target Telephone-1, had a series of phone calls in which Camarie Shavers ordered one ounce of cocaine. SALEEM traveled to 405 S. Anderson Street, Bunnell, Florida, which is the residence of Alfred Shavers, and sold Camarie Shavers the drugs.

On October 5, 2022, Camarie Shavers and SALEEM, using Target Telephone-1, had a series of phone calls in which Camarie Shavers ordered two and a half ounces of cocaine. They discussed where to meet and conducted the drug deal.

On October 5, 2022, Mascarella and SALEEM, using Target Telephone-1 had a phone conversation in which Mascarella ordered 4.5 ounces of cocaine and 5 pounds of methamphetamine. They met on October 6, 2022, at a parking lot in Ormond Beach. Law enforcement observed as SALEEM sold Mascarella the drugs.

On October 7, 2022, Camarie Shavers contacted SALEEM on Target Telephone-1 and ordered one ounce of cocaine. They discussed a meeting location and conducted the drug deal at 405 S. Anderson Street. Also on October 7, 2022, Alfred Shavers Jr. contacted SALEEM on Target Telephone-1 and ordered one nine ounces of cocaine. SALEEM drove to meet Alfred Shavers Jr. and conducted the drug deal.

On October 13, 2022, Camarie Shavers contacted SALEEM on Target Telephone-1 and ordered five ounces of cocaine and one ounce of methamphetamine. SALEEM confirmed the order and drove to meet Camarie Shavers and conduct the drug deal.

On October 14, 2022, Camarie Shavers contacted SALEEM on Target Telephone-1 and ordered one ounce of methamphetamine. SALEEM confirmed the order. Also on October 14, SALEEM used Target Telephone-1 to contact Mascarella. A series of phone calls transpired between SALEEM and Mascarella in which SALEEM agreed to sell her four ounces of cocaine and they agreed on a meeting location in a parking lot in Palm Coast.

On October 17, 2022, Alfred Shavers Jr. called SALEEM on Target Telephone-1 to one ounce of cocaine. Through multiple calls, SALEEM confirmed the order and told Alfred Shavers Jr. When he was on his way to meet with him. On October 18, 2022, Camarie Shavers ordered 3.25 ounces of cocaine from SALEEM on Target Telephone-1. SALEEM confirmed the order and told Camarie Shavers that he would be on his way to meet with him soon.

On October 20, 2022, Alfred Shavers Jr. contacted SALEEM on Target Telephone-1 and ordered eight ounces of methamphetamine. Through a series of calls, SALEEM confirmed the order, and told Alfred Shavers Jr. when he would arrive to meet with him and conduct the drug deal.

On October 21, 2022, Mascarella contacted SALEEM using Target Telephone-1 and ordered 4.5 ounces of cocaine. Through a series of phone calls,

SALEEM confirmed the order, gave Mascarella a time to meet him, and eventually they met in a parking lot in Daytona Beach. Law enforcement followed SALEEM to 10 Winterberry Place where SALEEM picked up the drugs and observed SALEEM meet with Mascarella and to sell her the cocaine in the parking lot. Also, on October 21, Alfred Shavers Jr. contacted SALEEM on Target Telephone-1 and ordered one ounce of cocaine. SALEEM confirmed the order and called when he was on his way to meet with Alfred Shavers Jr. Alfred Shavers Jr. told SALEEM that he left the money with his father, Alfred Shavers, and SALEEM confirmed that he would leave the cocaine with his father.

On October 23, 2022, Mascarella contacted SALEEM on Target-Telephone-1 and ordered 10 pounds of methamphetamine to purchase. Through a series of phone calls on October 24 and 25, SALEEM and Mascarella agreed on the amount of drugs, the price for the drugs, and where to meet. On October 25, SALEEM met with Mascarella in parking lot on County Road 325, Bunnell, Florida. Law enforcement observed as Mascarella and SALEEM pulled into the parking lot and conducted the drug deal.

On October 31, 2022, a lawfully authorized search warrant was executed at six locations in Palm Coast, Bunnell, and Daytona Beach, Florida. Drugs were found 10 Winterberry Place, which was SALEEM's stash house. Drugs were also found at 1205 North State Street, which is Alfred Shaver's residence. Finally, drugs were found at Mascarella's storage unit at 810 Jimmy Ann Drive, Daytona Beach.

Agents found and seized over 42 kilograms of methamphetamine and over 2.5 kilograms of cocaine.

All of the seized drugs mentioned in this factual basis were sent to the DEA laboratory and tested by the chemists in the DEA. All of them came back positive for the controlled substances described above and the amounts are the net amounts measured by the DEA laboratory.

The violation involved 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, and 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance.